# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**03-0564**

**STATE OF LOUISIANA**

**VERSUS**

**CHRISTOPHER ROSS**

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 260,431
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders and Jimmie C. Peters, Judges.

Cooks, J., dissents in part and assigns written reasons.

**AFFIRMED**

Charles E. Johnson, Jr.
Assistant District Attorney
P.O. Drawer 1472
Alexandria, LA 71309
(318) 473-6650
COUNSEL FOR APPELLEE:
    State of Louisiana

Laura Pavy
Louisiana Appellate Project
P.O. Box 750602
New Orleans, LA 70175-0602
(504) 833-2910
COUNSEL FOR DEFENDANT/APPELLANT:
    Christopher Ross

**SAUNDERS, J.**

The issues on appeal to this court arise from the rape of seven year old D.R. on or about November 25, 2000.

**PROCEDURAL HISTORY**

On February 22, 2001, the Defendant was indicted by the grand jury for the crime of aggravated rape, a violation of La.R.S. 14:42. On August 16, 2002, the Defendant waived his right to a jury trial. As a result, a bench trial was held on August 20, 2002, before the Honorable Harry F. Randow of the Ninth Judicial District Court. On October 29, 2002, the trial court found the Defendant guilty of aggravated rape. On November 18, 2002, the Defendant's motion for a new trial was denied. On December 19, 2002, the trial court sentenced the Defendant to life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence. On February 7, 2003, the Defendant's motion to reconsider sentence was denied. This appeal followed with the Defendant assigning the following errors:

1.  Assigned as error are all errors patent.

2.  The evidence was insufficient to support the verdict.

3.  It was error to permit the State to improperly bolster the credibility of the victim through the testimony of Dr. Daniel Lonowski.

4.  The trial court imposed an excessive sentence.

**ASSIGNMENT OF ERROR NUMBER ONE: ERRORS PATENT**

The Defendant first assigned as error all errors patent. According to La.Code Crim.P. art. 920 the following matters and no others shall be considered on appeal:

(1) An error designated in the assignment of errors; and

(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.

In accordance with La.Code Crim.P. art. 920 and after careful review of the pleadings and proceedings this court finds no errors patent.

## ASSIGNMENT OF ERROR NUMBER TWO:

The Defendant's second assignment of error concerns the claim that insufficient evidence was presented to support the verdict of the trial court. Specifically, the Defendant is challenging whether or not there was sufficient evidence of penile penetration. The Defendant also claims that the evidence offered by the victim was uncorroborated and insufficient. We affirm the holding of the trial court and find that sufficient evidence was presented to support the verdict.

The Defendant contends that;

[I]n the case before this Court, the eight year old victim stated that appellant "tried" to put his "middle part" or "tried to put his thing" in her. Rather than clearly and conclusively describing penile penetration, the child victim was quoted as stating that the incident involved appellant having "touched her . . . down there" suggesting the very real possibility that if there was penetration, it was digital. If the penetration was digital rather than penile, the verdict greatly overstated the gravity of the offense.

Significantly, the testimony of the child remained uncorroborated by any of the other people present in the small and crowded [sic] home. If in fact forcible penile penetration had occurred, the young child would have cried out in pain - and yet no one heard [sic] thing. The best the medical experts could offer was testimony that the injury was "consistent with" penetration. As this Court is well aware, however, such testimony does not exclude the very real possibility that the penetration was digital and not penile. The fact remains that the mother of the child examined the child's genitalia on the morning following the incident and observed nothing, only to note that the child's genitalia commenced bleeding more than a full week later. Only then did the child indicate pain in her

2

genitalia. These circumstances alone call into question the weight of the proof of aggravated rape by the appellant on the date alleged.

In *State v. Kennerson,* 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371, this court explained:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia* , 443 U.S. 307, 99 S.Ct. 2781, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195; *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt. (citations omitted).

In *State v. Hongo,* 625 So.2d 610, 616 (La.App. 3 Cir. 1993), *writ denied*, 93-2774 (La. 1/13/94), 631 So.2d 1163, this court explained:

> The trier of fact may accept or reject, in whole or in part, the testimony of any witness. *State v. Williams*, 452 So.2d 234 (La.App. 1 Cir. 1984), *writ not considered*, 456 So.2d 161, *reconsideration not considered*, 458 So.2d 471 (La.1984). The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Tompkins*, 403 So.2d 644 (La.1981), *appeal after remand,* 429 So.2d 1385 (La.1982). Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual conclusion. *State v. Owens* , 606 So.2d 876 (La.App. 2 Cir. 1992).

Louisiana Code of Criminal Procedure Article 14:42 provides in pertinent part:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . . .

3

(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

In *State v. Allen,* 02-0593, p. 3 (La.App. 3 Cir. 11/6/02), 830 So.2d 606, 608, this court held that "the victim's testimony, alone, is sufficient to establish the fact of penetration."

In this case, after the presentation of the evidence and taking the matter under advisement, the trial court found the Defendant guilty of aggravated rape, stating in pertinent part:

> The first evidence to be commented on is that of the medical testimony. Dr. Myers and Dr. Yang's testimony convinces the Court beyond a reasonable doubt that [D.R.] was penetrated. Both of the doctors were clear and emphatic in their testimony regarding their medical finding.
>
> The Court found the testimony of both doctors to be very credible on this issue.
>
> The testimony of a child is always subject to question and doubt because of their age and their susceptibility to being influenced. Are they testifying from actual events or is it just fantasy? The Court has considered the testimony of [D.R.] very closely for these very reasons. The evidence did not show that [D.R.] had been exposed prior to this incident to any sexual material or influences that could be a basis for the story related to this incident.
>
> Further, [D.R.] has been consistent in telling her story of what happened on the night of November 25th, 2000. The only exception to her admission is that she told two people that Chris did not touch her. This admission is significant and the Court has not disregarded it, however, in the totality of her statements to her sister and cousin at the time of the incident, to her mother the next morning, her statement to the doctors, her statement at the Children's Advocacy Center and her testimony at trial. The Court finds her testimony to be more credible than the admitted denial.
>
> In deliberating on this issue the Court found the testimony of Dr. Daniel Lonowski to be helpful. The testimony shows that [D.R.] was confronted by members and friends of Chris' family to recant. The Court believes that the pressure on this 7 year old child is the most likely explanation for her denial.
>
> The Court also finds that the testimony of her mother and father regarding [D.R.]'s changes in personality on the day and days that

4

followed the events of November 25th, add to the credibility of the victim's testimony.

Dr. Lonowski supported the observations of the parents as indications of an incident.

The defendant argues in his brief that the time line of events does not support the State's case. First he argues that [D.R.] was examined by her mother on the morning of November 25th and she observed no signs of sexual abuse. The Court is not persuaded by this argument. Ms. Holmes is not a person trained in performing such examinations. Further, the Court is not convinced that Ms. Holmes performed anything but a superficial exam. She admitted that she did not know what to look for in indicating sexual abuse. The fact that errors in judgment by the mother in not taking [D.R.] to the hospital that day or sooner and failing to inform the father regarding the incident do not detract from these facts.

The defendant also makes an issue of the delay in [D.R.] being examined by a doctor and the differences in the findings or lack of findings between the doctors. The Court does not find this position persuasive either. The findings of Dr. Myers and Dr. Yang are consistent and they are consistent in regards to the fact that [D.R.] suffered from a penetration.

Some of the differences may well be due to the interval of time between the two exams as well as the more complete exam that was performed by Dr. Yang, but in the final analysis, the opinions of both doctors were consistent in their findings of sexual trauma.

Lastly, the Court did not find the testimony of the other defense witnesses helpful in casting doubt on the State's case, in fact, the Court attributes little or no credibility to these witnesses' testimony.

Therefore, this Court is satisfied after considering the totality of the evidence and for the reasons stated this morning, that the State has proven beyond a reasonable doubt that Christopher Ross committed the crime of aggravated rape against [D.R.].

After a careful review of the record we agree with the findings of the trial court.

On or about November 25, 2000, F.D.R.[1], the victim's father, brought the victim,

D.R., to G.R. and E.R.'s home to spend the night while F.D.R. went to the Bayou

---

[1]Because the father of the victim has the same initials as the victim, he will be referred to as F.D.R.

Classic in New Orleans. F.D.R. recalled dropping D.R. off around 5:00 or 6:00 p.m.. D.H., the victim's sister, was already at the Defendant's home.

The Defendant, the son of G.R. and E.R., was present at the home along with the Defendant's sister, L.R., the Defendant's aunt, Kathy Faye Bell, and Charles Swafford.

D.R. testified that she spent the night at her Uncle E.R.'s home around Thanksgiving and while she was alone playing with dolls in L.R.'s room, the Defendant came into the room. D.R. testified that he was wearing boxer shorts and a shirt. D.R. testified that the Defendant laid her across the bed, pulled her panties down, pulled his pants down, and "tried to force - - force his middle part in me." On cross-examination, D.R. stated "[h]e tried to stick his thing between his legs in me." When asked where is the middle part located on a man's body, D.R. responded, "[b]etween his legs." When asked did it go inside of her, the victim responded, "[a] little bit." According to D.R., the act did not hurt. The victim testified the Defendant was the only person who had ever done this to her.

At trial the State introduced into evidence a video interview of D.R. taken by Ms. Terry Lewis, of The Rapides Children's Advocacy Center, on December 12, 2000. When shown a drawing of an unclothed girl and asked to name the body parts of the girl, D.R. referred to the genital area of the girl as her "teeny." When shown a drawing of an unclothed boy and asked to name the body parts of the boy, D.R. referred to the genital area of the boy as his "teeny." The victim then told Ms. Lewis that while she was alone in L.R.'s room, the Defendant came into the room wearing boxers and a shirt. He pulled his pants down, he pulled her panties down, he pushed her down on the bed causing her to lie on her back and he "tried to stick it" in her "teeny." She stated that the Defendant's "teeny" felt hard and she felt it touch inside.

She described that it felt dry, then, at one point it was wet and the wet went inside. When asked by Ms. Lewis where the wet came from, D.R. indicated to the male genital part on the unclothed drawing of the boy.

D.H., who was age eleven at the time of the trial, testified she also spent the night at the G.R. and E.R.'s home that night. She was in the bathroom with her cousin L.R. when D.R. knocked on the bathroom door and told her "he tried to put his thing in her" while she was in L.R.'s room. L.R., who was age thirteen at the time of the trial, testified that when D.R. knocked on the bathroom door, she said "Chris touched her."

Kathy Faye Bell testified she was up all night the night of the incident and that early the next morning D.R. came to her and told her that the Defendant touched her "down there."

Around 8:30 a.m., on the morning after the incident, D.R.'s mother, E.H., arrived and D.R. informed E.H. what had transpired. E.H. testified that she examined D.R.'s vaginal area at the R's home but observed no swelling, redness, or blood, but did notice a little tenderness. E.R. testified that when D.R.'s mother arrived, he heard D.R. tell her mother that the Defendant had touched her. On Sunday, D.R. went to stay with F.D.R. and was with F.D.R. until the following Saturday. On the following Saturday, E.H. testified D.R. had spots of blood in her panties and she took D.R. to the hospital.

Dr. Deborah Myers, a pediatrician, was accepted by the trial court as an expert in the field of child sexual abuse. Dr. Myers testified that she examined D.R. on December 14, 2000, after the child was referred to her by the Alexandria Police Department due to a complaint of sexual abuse. D.R. gave Dr. Myers a history stating that on Thanksgiving weekend a seventeen-year-old boy named Chris stuck his thing

7

inside her tee-tee or in her tee-tee. Dr. Myers testified that she conducted a standard exam called a frog-leg labial spread exam. Dr. Myers observed that the victim was "very, very swollen and tender in the clitoral area." Dr. Myers testified the victim was so swollen she was unable to get "a really good look at things." Dr. Myers testified that the victim had a gaping vaginal opening but the swelling made it difficult to see further damage. Dr. Myers explained that a normal "virginal seven year old's vaginal opening is practically closed." In this case, Dr. Myers found that the hymen was missing. However, as a result of her inability to perform a more thorough exam due to the swelling of D.R.'s genital area, she referred D.R. to Huey P. Long Hospital for a complete examination. Dr. Myers explained:

> I was afraid that there was some internal damage that may need repairing and the only way in a child this age to get an inside look that's adequate and also possibly having to repair things, is to do something called an exam under anesthesia, which is what I sent her to Huey Long to have obtained.

Dr. Myers further testified that, in her opinion, the injury was compatible with the victim's story of penetrating sexual activity. Dr. Myers explained that from the trauma she observed something passed through the victim, although she could not say whether it was a "penis . . . a broomstick, or . . . a Coke bottle top." When asked whether the swelling, tenderness and inflammation would last twenty days after sexual trauma, Dr. Myers responded that it was possible if the damage was severe enough, if there was ongoing trauma, or if there was an infection. When asked if there was any specific time period for a child to heal from sexual trauma, Dr. Myers explained that every child is different because there are differing amounts and degrees of trauma. Finally, Dr. Myers found no sign of infection, and D.R. indicated that she was not a victim of any other incident of sexual trauma.

8

Dr. Lillie Yang, an Obstetrician/Gynecologist, was accepted by the trial court as an expert in the field of gynecology. Dr. Yang testified that she examined D.R.'s genital area on December 19, 2000, at Huey P. Long Hospital while D.R. was under anesthesia. Dr. Yang testified that she observed that the outer genital area of the victim had extensive abrasions and excoriations. Dr. Yang stated the area was "quite" red and the hymenal room was open and that around the entry point of the vagina she observed abrasions and that the abrasions were consistent with penetration. Dr. Yang testified there were perforations of the hymen and that the hymen ovum was completely open. According to Dr. Yang, in a normal seven year old, with a non-perforated hymen, one would hardly be able to put a finger into it [the vagina], but in this case she observed that the victim's hymen was "simply a big hole." This meant that "something large enough to fit through the vagina . . . has gone through it." When asked whether she would have expected those findings nearly a month after the sexual trauma, Dr. Yang responded, "Yes." When asked whether the presence of swelling, tenderness and inflammation twenty days after a sexual trauma was abnormal, Dr. Yang responded: "I would have expected it to have decreased but . . . I would not rule it out that it can't be there." Additionally, Dr. Yang acknowledged that there was no specific time period for someone who suffered sexual trauma to be completely healed. In response to questioning concerning whether the injury could have been caused by a fall, Dr. Yang explained:

> [T]he injury is limited to the introitus area. If it was a fall, I believe that the injury would have been more extensive, meaning that other areas would have been affected. When I examined the patient, only the circular area around the vagina was effected and I did not see any injury outside of that.

In support of his argument that insufficient evidence was presented to prove penile penetration and support the verdict of the trial court, the Defendant cites *State*

*v. Marigny*, 532 So.2d 420 (La. App. 1 Cir. 1988). Marigny was convicted by a jury of carnal knowledge of a juvenile. On appeal, Marigny challenged the sufficiency of the evidence. The court found insufficient evidence was presented to find the defendant guilty of carnal knowledge of a juvenile but found the defendant guilty of the lesser included offense of attempted carnal knowledge of a juvenile. The court explained in pertinent part:

> The only evidence introduced at trial relating to proof of sexual intercourse consists of Ms. "A" 's testimony that she and the defendant "had sex" and the testimony of Ms. "A" 's mother that Ms. "A" made the same statement to her. There was no evidence that Ms. "A" understood the phrase "had sex" to mean sexual intercourse. The state did not produce sufficient evidence to indicate that there was any penetration, which is an element of the offense charged. The alleged victim did not sufficiently testify as to penetration. Nor was any medical evidence of penetration presented, although it was stated by other witnesses that the alleged victim had been taken to at least two doctors in connection with this.

*Id*. at 422.

In *State v. Self*, 98-0039 (La.App. 3 Cir. 8/19/98), 719 So.2d 100, *writ denied*, 98-2454 (La. 1/8/99), 734 So.2d 1229, the defendant was convicted of the aggravated rape of his eleven-year-old daughter. On appeal, the defendant challenged the sufficiency of the evidence; specifically, he challenged only whether anal or vaginal sexual intercourse occurred alleging:

> During the investigation, [P.S.] only described improper "touching" by her father. Debra Waters, Office of Community Services, testified that [P.S.] never said anything about genital contact, and it was not until after the medical examination that they believed genital contact had occurred. Joann Carter, a juvenile officer with the Sabine Parish Sheriff's Office, stated she knew of no occasion where [P.S.] has said there was genital contact between her and her father. Claudia Triche, a social worker, testified that [P.S.] states that her father touched her private parts and that he climbed on top of her and she has never told me anything other than that.
>
> There was physical evidence of abuse; however, Dr. Ann Springer indicated that she could not testify as to what caused the penetration. Prior to trial, [P.S.] described only "touching." It was not until trial that

[P.S.] answered, "Yes" when asked, "Did he ever put his private part together with yours?" A reasonable doubt exists as to whether or not sexual intercourse occurred.

*Id*. at 101.

However, the court in *Self* found that sufficient evidence was presented to support a finding of aggravated rape, stating in pertinent part:

Our *Jackson* review established that the victim testified that defendant touched her private part with his, that defendant was the only one who touched her privates. Dr. Ann Springer, a pediatrician, who specialized in child abuse, testified that the victim's vagina had been penetrated.

*Id*. at 101.

Similarly in this case, the victim testified that the Defendant tried to stick his thing or middle part in her and it went inside of her a little bit. The victim related a similar account to Ms. Lewis where she stated that the Defendant "tried to stick it" in her "teeny" and she felt it touch inside. Moreover, in the history given to Dr. Myers, the victim stated that the Defendant stuck his thing inside her tee-tee or in her tee-tee. Further, the victim testified that the Defendant was the only one who had ever done this to her. Both Dr. Myers and Dr. Yang, based upon their examinations, concluded that the victim's vagina had been penetrated. In *Self*, 719 So.2d at 101, this court, quoting *State v. Bertrand*, 461 So.2d 1159, 1161 (La.App. 3 Cir. 1984), *writ denied*, 464 So.2d 314 (La.1985), noted, "[a]ny penetration, however slight, of the aperture of the female genitalia, even its external features, is sufficient."

This court finds no evidence in the record to support the Defendant's contention that there was only digital penetration. Consequently, this court, viewing the evidence in the light most favorable to the prosecution, finds that the evidence is sufficient to support a conviction of aggravated rape.

This assignment of error is without merit.

11

**ASSIGNMENT OF ERROR NUMBER TWO:**

The Defendant contends the trial court erred in permitting the State to improperly bolster the credibility of the victim through the testimony of Dr. Daniel Lonowski. Specifically, the Defendant complains about the following exchange:

> Q    Is there anything unusual in your experience, about a child who had been sexually attacked later saying that it didn't happen, even though, in fact, it did, is there anything unusual about that?
>
> A    Not at all, it's common. In fact, it's almost so common it's expected.

According to La.Code Crim.P. art. 841(A):

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

The Defendant contends that through this testimony Dr. Lonowski improperly vouched for the victim's credibility. A review of the record indicates the Defendant did not object to this aspect of Dr. Lonowski's testimony at trial. Consequently, the Defendant cannot raise this issue on appeal.

Accordingly, this assignment of error is without merit.

**ASSIGNMENT OF ERROR NUMBER THREE:**

The Defendant contends that the trial court imposed an excessive sentence. The Defendant argues that he was only sixteen[2] years old at the time of the alleged crime and, although his criminal record is not exemplary, he is not the worst of offenders. The Defendant believes this court should set aside his sentence and remand for a sentence "more fairly reflective of the offense and the offender."

---

[2]At trial, the Defendant testified he was seventeen years old at the time of the incident.

When imposing the sentence, the trial court stated in pertinent part:

> You heard my reasons for judgment in which I went over the evidence and it was my considered judgment that the evidence was sufficient to convict you of the offense of aggravated rape. As a result the Louisiana Legislature has instructed the courts of this State as to what that sentence must be, and so, following the mandate of the Louisiana Legislature as found in Revised Statute 14 Section 42.1:

> It is the sentence of this court that you, Christopher Ross, having been found guilty of committing the crime of aggravated rape, you shall be sentenced to the Louisiana Department of Corrections to serve a life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.

In January 2003, the Defendant filed a Motion to Reconsider Sentence asserting that his sentence, as applied to him, was in violation of La.Const. art. 1, § 20 because the sentence was grossly disproportionate to the seriousness of the offense, made no measurable contribution to acceptable goals of punishment, and was nothing more than the purposeless imposition of pain and suffering. Additionally, the Defendant asserted that the sentence imposed, although within the statutory limits, was a manifest abuse of discretion and that the trial court failed to articulate the factual basis for the imposition of the sentence. Moreover, the Defendant averred that the trial court failed to consider applicable mitigating circumstances and failed to advise him whether the sentence was subject to diminution for good behavior, parole eligibility or enhancement and, if so, what would be the prospective release dates.

Louisiana Revised Statute 14:42 provides a mandatory life sentence for a defendant convicted of aggravated rape.

In *State v. Paddio,* 02-0722, pp. 16-17 (La.App. 3 Cir. 12/11/02), 832 So.2d 1120, 1131, this court explained:

> [A] sentence, although within the statutory limit, is considered to be excessive if "the penalty is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering." *State v. Kitchen* , 94-0900, p. 3 (La.App. 3 Cir. 2/1/95), 649 So.2d 1227, 1229, *writ denied*, 95-0537

13

(La.6/23/95), 656 So.2d 1012 (quoting *State v. Bonanno*, 384 So.2d 355, 357 (La.1980)). A mandatory life sentence is not per se unconstitutional. *Richardson v. La. Dept. of Public Safety and Corrections*, 627 So.2d 635 (La.1993). However, a trial court has the authority to determine whether a mandatory minimum sentence is constitutionally excessive as applied to a particular defendant. *State v. Dorthey*, 623 So.2d 1276 (La.1993). Further, this review extends to all mandatory minimum sentences and not just those imposed under the habitual offender law. *State v. Fobbs*, 99-1024 (La.9/24/99), 744 So.2d 1274.

Nevertheless, a court may depart from a minimum sentence only if it finds that there is clear and convincing evidence that rebuts the presumption of constitutionality. *State v. Lindsey*, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339, *cert. denied*, 532 U.S. 1010, 121 S.Ct. 1739 (2001). To rebut the presumption, a defendant must show, by clear and convincing evidence, that, "because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *State v. Johnson*, 97-1906, p. 8 (La.3/4/98), 709 So.2d 672, 676 ( *quoting from Judge Plotkin's concurrence in State v. Young*, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 531, *writ denied*, 95-3010 (La.3/22/96), 669 So.2d 1223). (citations omitted).

In *State v. Johnson*, 97-1906, p. 9 (La. 3/4/98), 709 So.2d 672, 677, the

supreme court explained:

We emphasize to sentencing judges that departures downward from the minimum sentence . . . should occur only in rare situations. As Chief Justice Calogero noted in a prior case:

The substantive power to define crimes and prescribe [sic] punishments lies in the legislative branch of government. [citation omitted]. Our decision in *State v. Dorthey*, 623 So.2d 1276 (La.1993), did not purport to grant a district court the power to usurp that legislative prerogative or to impose what the court believes is the most appropriate sentence for a particular offender in a particular case. *Dorthey* gives the district court the authority to depart from the mandatory minimum sentences provided by the legislature only in those relatively rare cases in which the punishment provided violates the prohibition of La.Const. art. I, § 20 against excessive sentences. (citations omitted).

In this case, the Defendant has failed to prove by clear and convincing evidence

unusual circumstances that demonstrate that this defendant is a victim of the

legislature's failure to assign sentences that are meaningfully tailored to the culpability

of the offender, the gravity of the offense, and the circumstances of the case.

14

Furthermore, the Defendant failed to prove any unusual circumstances warranting a departure from the mandatory minimum sentence provided by the legislature. Consequently, this court finds that the sentence imposed upon the Defendant is not constitutionally excessive.

Accordingly, this assignment of error is without merit.

**CONCLUSION:**

The Defendant's conviction and sentence are affirmed.

**AFFIRM**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 03-564

**STATE OF LOUISIANA**

**VERSUS**

**CHRISTOPHER ROSS**

**COOKS, J**., **dissents in part**.

While I agree with the portion of the majority opinion affirming Defendant's conviction, I would vacate Defendant's sentence and remand the matter for a *Dorthey* hearing to determine whether the minimum life sentence mandated for the crime this particular defendant committed is constitutionally excessive.

It appears that the trial judge felt compelled, without more, to impose the mandatory life sentence. However, the Supreme Court has instructed in *Dorthey* and its progeny that in certain rare instances the district court may be required to do more. I am not comfortable with affirming Defendant's life sentence without clear expression from the trial judge that he considered Defendant's young age at the time of the offense, his propensity to engage in future violent acts, the gravity of the offense on the victim, Defendant's maturation level at the time of the crime in light of his "special" education classification, and any other factor which might establish by clear and convincing evidence that requiring this sixteen year old Defendant to serve life in prison is constitutionally excessive.

I would caution that a decision to remand this matter for resentencing should not be viewed as a beacon for others to demand a *Dorthey* hearing in every case where a life sentence is imposed. In this rare instance, the age of the Defendant and the

absence of a well developed record requires a remand for resentencing.