NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-582


STATE OF LOUISIANA

VERSUS

GERALD RAY LEWIS

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 5752-05
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

AFFIRMED AS AMENDED;
REMANDED WITH INSTRUCTIONS.

John F. DeRosier
District Attorney, 14th JDC
Carla S. Sigler
Assistant District Attorney
P. O. Box 3206
Lake Charles, LA 70602-3206
Counsel for Appellee:
        State of Louisiana

**Carey J. Ellis  III**
**Louisiana Appellate Project**
**707 Julia St.**
**Rayville, LA 71269**
**Counsel for Defendant/Appellant:**
**Gerald Ray Lewis**

**Gerald Ray Lewis**
**Louisiana State penitentiary**
**CBB L/R #3**
**Angola, LA 70712**
**Pro Se Appellant**

**PICKETT, Judge.**

On March 17, 2005, defendant Gerald Ray Lewis was charged by bill of indictment with one count of first degree murder, a violation of La.R.S. 14:30, and one count of second degree murder, a violation of La.R.S. 14:30.1, based on his conduct in two separate incidents. On March 7, 2006, the State amended the first count down to second degree murder.

On November 6, 2006, the defendant argued a motion to sever the charges in open court; after hearing argument, the trial court denied the motion. On November 6 and 7 the parties selected a jury, which began hearing evidence on November 8. On November 10, 2006, the jury found the defendant guilty of the lesser-included offense of manslaughter on one count and guilty as charged on the other.

On December 8, 2006, the trial court sentenced the defendant to forty years at hard labor for manslaughter, and to life imprisonment for second degree murder. The court ordered that the terms run consecutively to one another.

The defendant now appeals his convictions and sentences, assigning two errors through counsel, and assigning three more pro se.

## FACTS:

**Count No. 1:** On October 23, 2001 in Lake Charles, the defendant was driving a car that was also occupied by Jason Thomas, the victim, John Pappillion, and the victim's friend, Arthur McNeil. The latter two men were seated in the rear of the vehicle. Pappillion had bought crack cocaine from the defendant and Thomas earlier in the day, and wanted to buy some more. The defendant ignored the victim's request to take him home, and drove to an area ballpark. When the victim reached into his pocket to get some money for a drug transaction, Jason Thomas pulled a gun. The

1

victim attempted to escape, but as he exited the car, the defendant caught hold of his shirt, and Thomas shot him. The defendant and Thomas then got out of the car and retrieved the victim's wallet.

**Count 2:** On January 24, 2002, the defendant was a "tier rep" in the Calcasieu Parish jail. That meant that he cleaned other inmates' cells in exchange for privileges such as extra phone time, and generally greater freedom of movement. The victim, Bobby Pete, was an inmate who received packages of hygiene products and t-shirts termed "indigent commissary" or "indigent bags." The bags were supplied to inmates who could not afford to purchase supplies. The defendant often traded cigarettes for items such as t-shirts from the bags. On the date at issue, the victim refused to sign for his bag. The defendant became angry, and the two men argued. Later, the defendant called over the jail intercom to be let into the victim's cell to clean it. A tower guard opened the door by remote control, and the defendant and his fellow tier rep, Nathaniel Smith, entered the victim's cell. A physical altercation ensued. The victim sustained a head injury, and ultimately died from an intra-cranial hemorrhage.

## ERRORS PATENT AND PRO SE ASSIGNMENT OF ERROR NO. 3

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are two errors patent.

The first error corresponds to the defendant's third pro se assignment of error. The trial court sentenced the defendant to forty years at hard labor without benefit of parole. La.R.S. 14:31 provides that a person convicted of manslaughter "shall be imprisoned at hard labor for not more than forty years." There is no prohibition against imposing a sentence subject to parole, probation or suspension of sentence.

2

However, La.Code Crim.P. art. 893 provides that persons convicted of violent offenses listed in La.R.S. 14:2(B), which includes manslaughter, are to be denied the benefit of suspension of sentence. Therefore, the trial court erred when it stated that the defendant's sentence was to be served without benefit of parole. Accordingly, this court amends the defendant's sentence on the conviction of manslaughter to delete the denial of parole eligibility and instruct the district court to make an entry in the minutes reflecting this change. *See State v. Gregrich*, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694 and *State v. Buckley,* 02-1288 (La.App. 3 Cir. 3/5/03), 839 So.2d 1193. _____

Second, the record does not indicate that the trial court advised the defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform the defendant of the provisions of article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion, and to file written proof that the defendant received the notice in the record of the proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

**ASSIGNMENT OF ERROR NO.1:**

In his first assignment of error, the defendant argues the evidence adduced at trial was insufficient to support either of his convictions. The analysis for such claims in well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195,

3

62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

As noted earlier, the defendant was convicted of the manslaughter of John Pappillion. Manslaughter is defined by La.R.S. 14:31, which states, in pertinent part:

A. Manslaughter is:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

(2) A homicide committed, without any intent to cause death or great bodily harm.

(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or

(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.

The evidence presented by the state and its apparent theory of the case indicated that Pappillion was killed in the course of an armed robbery. Since armed robbery is a felony enumerated in Articles 30 and 30.1, the circumstances do not seem to fit the definition of manslaughter. Thus, it appears the jury reached a compromise

verdict. In a similar situation, this court has explained: "[T]he verdict of attempted manslaughter may have reflected the jury's right to compromise between the verdicts of guilty of attempted second degree murder and not guilty. In *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983), the court held that compromise verdicts are permissible, so long as the evidence supports either the verdict given or the original charge." *State v. Charles*, 00-1611, pp. 4-5 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, 519, *writ denied*, 01-1554 (La. 4/19/02), 813 So.2d 420.

The evidence adduced in this case would have supported a conviction for second degree murder. Although the record demonstrates that the defendant did not fire the weapon that killed Pappillion, it also demonstrates that he was a principal to the homicide. The law of principals is set forth by La.R.S. 14:24:

"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." There were three eyewitnesses to the crime, including the shooter, Jason Thomas, and he did not testify.

Arthur McNeil testified to the scenario described in the "Facts" section of this opinion. The defendant was driving the car in which all four men were riding. Pappillion had entered the car to buy drugs, and McNeil had gotten in too, to keep an eye on Pappillion. He thought Pappillion was already "high" from earlier drug use, and that he was bragging too much about a sum of money that he had. Once the victim and McNeil were in the car, the defendant ignored Pappillion's request to stop by his house, and said he needed to get some gas. However, when he stopped at a

filling station, he quickly pulled out and drove to an unoccupied local ballpark. The victim, who had bought crack cocaine from the defendant earlier that day, reached into his pocket for some money to buy more drugs, but Thomas, who was in the front passenger seat, drew a gun. Pappillion, who was sitting behind the defendant, opened the door to flee, and managed to get out of the car. However, the defendant turned and caught hold of the victim's shirt, then Thomas shot him. The defendant and Thomas then got out of the car and retrieved the victim's wallet. The defendant took the stand in his own defense. His testimony mirrored McNeil's regarding the general facts of the incident. However, he testified that when he touched the victim, he was trying to calm him down, and that he had not planned to commit the robbery. Thus, the state's case on this count rested upon the jury's determination of which eyewitness it found more credible. Apparently, the jury found McNeil's testimony, as a whole, more believable than the defendant's.

Other witnesses testified for the state, but their testimonies merely helped show the timeline of events surrounding the homicide, and the subsequent investigation. The crux of the state's case was clearly McNeil's testimony, especially since the defendant's own version of events was similar to his.

As mentioned in *Kennerson*, credibility is a matter for the jury, and should not be second-guessed on appeal. This court has explained:

> Where conflicting testimony exists, calling for a determination of credibility of the witness is a matter of weight of the evidence and not its sufficiency. *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. *State v. Nolan*, 503 So.2d 1186 (La.App. 3 Cir.), *writ denied*, 507 So.2d 226 (La.1987).

*State v. Duncan*, 93-1384, p. 8 (La.App. 3 Cir. 4/6/94), 635 So.2d 653, 657, *writ denied*, 94-1067 (La. 10/28/94), 644 So.2d 649. In light of *Duncan* and *Kennerson*, the defendant's credibility-based arguments regarding his conviction for manslaughter lack merit.

As mentioned earlier, the evidence showed that the defendant acted as a principal to Pappillion's murder. He drove the car to a relatively isolated location, despite the victim's request to go home; he grabbed the victim's shirt to prevent his escape; next he secured the victim's wallet and took money from it. From this evidence, the jury could reasonably infer that defendant intentionally participated in the robbery-murder. As this court recently discussed:

> Under La.R.S. 14:30.1, second degree murder, in pertinent part, is the killing of a human being while the offender is engaged in the perpetration of an armed robbery. The evidence most favorable to the prosecution shows that Defendant, the taller of the two, drove Guillory in Guillory's car to "case" LeJeune's Grocery in preparation for robbing it later in the day. Both Defendant and Guillory participated in the armed robbery; and during the robbery, one of them intentionally killed Mr. LeJeune by firing two gunshots into his head. Officers identified Defendant as the driver of the car, who was the last of the two young men to leave the store, so Guillory was already in the car. Again, as the driver of the car, Defendant was responsible for revving the engine and spinning the tires as well as the hurried exit. If Defendant had been an innocent party leaving the store after discovering Guillory's crime, he would likely have been more interested in getting help for Mr. LeJeune, who was still alive and in getting away from Guillory, than in assisting Guillory in fleeing the crime scene.
>
> This court has previously stated that, if the State proves a defendant participated in an armed robbery and someone was killed during the offense, it has sufficiently proven that the defendant was a principal to the offense of second degree murder. *State v. Cooper*, 03-161 (La.App. 3 Cir. 12/23/03), 862 So.2d 512, *writ denied*, 04-236 (La.6/4/04), 876 So.2d 74. Accordingly, we find that this assignment of error is without merit.

*State v. Singleton*, 06-1372, pp. 11-12 (La.App. 3 Cir. 3/14/07), 953 So.2d 168, 175.

For the reasons discussed, this portion of the assignment lacks merit.

7

Regarding the second count, second degree murder is defined by La.R.S. 14:30.1(A), which states, in pertinent part: "Second degree murder is the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm. . . ."

There was no eyewitness testimony other than that of the defendant himself. He admitted going to Bobby Pete's cell to fight him. The defendant said they had argued over a prior agreement for him to trade cigarettes to Pete in return for Pete's commissary supplies. Although the defendant admitted fighting the victim, and noted that he saw Pete "hit his head" on something during the altercation, he denied having any intent to kill or inflict great bodily harm. Further, he testified the victim willingly entered into the fight with him, and that Pete was ready to continue the fight after hitting his head. However, he also testified that the other "tier rep," Nathaniel Smith, entered the cell and hit Pete twice. At that point, the victim seemed to lose consciousness, and his eyes rolled up in his head. During the state's case, forensic pathologist Dr. Terry Welke testified that Pete died from an intra-cranial hemorrhage.

The defendant testified that after the 6:00 p.m. head count, he went back up to Pete's cell to smoke with him, but that the other man did not respond. According to the defendant, the victim was moody and sometimes would not want to talk, so he kept calling his name. Finally, he realized something was wrong, and called the other tier rep. The two men then threw cups of water on Pete, but he did not revive. The defendant testified that he then used the intercom to call the tower guard to come check on the victim.

Another inmate, who testified for the state, Kenneth Farras, stated that on the day of the incident, he occupied a cell directly under Pete's. That day, he heard the

defendant arguing with Pete over the latter man's "indigent bag." Later, after supper, he saw the defendant and the other "tier rep," Smith, go upstairs, carrying their cleaning equipment. He then heard sounds of a fight. Another inmate, Tyrone Thibodeaux, ran upstairs, but quickly came back down. Farras saw the two "tier reps" come back down the stairs and heard Smith say something like "knocked him out cold."

Farras also testified that later the defendant gave him a t-shirt with three small drops of blood on it, and asked Farras if he knew how to get the blood out. When Farras responded affirmatively, the defendant asked him to wash the shirt. Later that night, he received a written note from the defendant telling him to pretend he didn't know anything about the incident. The note also contained instructions to flush it down the toilet, and Farras did so after reading it. He testified that he later received a similar note, but could not remember any details about it. When the defendant took the stand, he denied any such contact with Farras.

Detective Bradley Leroy testified that during the investigation, inmate Tyrone Thibodeaux gave a statement that he saw the two tier reps go to the victim's cell. He then heard sounds of fighting, so he ran upstairs from the common area, and saw the defendant and Smith beating Pete. When Thibodeaux was called to testify, he essentially refused. He acknowledged that he heard arguing, but claimed not to remember anything else. He identified his own still image from the videotaped statement given to investigators, but testified he did not remember telling Leroy he saw Lewis and Smith hit Pete.

Any credibility determinations were within the jury's province. It could well have accepted the testimony of the state's witnesses as true, and rejected the defendant's testimony.

The state's theory of the case appears to have been summed up in its close:

> But he doesn't want you to believe that those notes ever existed because if they did it shows his guilty knowledge. He didn't want to tell anybody, the authorities at least, that he had killed this man, or that he had went up there to beat him up. But that is exactly what he did. And when he went up there to beat this poor man up and accomplish his feat and killed him that makes him accountable and responsible for the crime of Second Degree Murder by definition.

The state carried the burden of proving that the defendant acted with an "intent to kill, or to inflict great bodily harm."

The Louisiana Supreme Court has stated:

> Moreover, the Defendant's statement that his co-defendants should "Take them out," supports that even if he was not the shooter he had the requisite mental state to be a principal to murder. The Criminal Code does not define "great bodily harm." However, the somewhat analogous "serious bodily harm" is found in second degree battery, La. Rev Stat. 14:34.1, and is defined in part as "bodily injury which involves unconsciousness, extreme physical pain. . . ." Accordingly, *even if the Defendant simply intended to knock out* Shinberger and Tesnear it suggests that he had the requisite specific intent to kill or grievously harm all of the employees in the store.

*State v. Hampton*, 98-331, p.142 (La. 4/23/99), 750 So.2d 867, 881, n. 10, *cert. denied*, 528 U.S. 1007, 120 S.Ct. 504 (1999). (Emphasis added).

Appling with the language in *Hampton* to the present case, the evidence supports a finding that the defendant had the requisite specific intent to "inflict great bodily harm."

We find the evidence adduced at trial is sufficient to support the conviction for second degree murder. Accordingly, this portion of the assignment lacks merit.

**ASSIGNMENT OF ERROR NO. 2:**

In this assignment of error, the defendant argues the trial court erred by denying his motion to sever the charges. The standard of review on this issue is whether the trial court abused its discretion. *State v. Caston*, 04-1986 (La. 8/5/04), 877 So.2d 999. As he did in his motion below, the defendant argues that trying the cases together prejudiced his defense because the jury might have viewed the defendant "as someone who is predisposed to criminal behavior." However, he acknowledges that a defendant seeking severance must carry a high burden in order to demonstrate that severance is necessary.

The state relies upon language from the supreme court:

> A motion to sever is addressed to the sound discretion of the trial court, and the court's ruling should not be disturbed on appeal absent a showing of an abuse of discretion. [*State v.*] *Brooks*, 541 So.2d [801 (La. 1989)] at 804 (citing *State v. Williams*, 418 So.2d 562, 564 (La.1982)). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder will be prejudicial, the court should consider the following: (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. *Id.* (quoting *State v. Washington*, 386 So.2d 1368, 1371 (La.1980)). However, the fact that evidence of one of the charges would not be admissible under *State v. Prieur*, 277 So.2d 126 (La.1973), in a separate trial on the joined offense, does not per se prevent the joinder and single trial of both crimes, if the joinder is otherwise permissible. *State v. Davis*, 92-1623, p. 9 (La.5/23/94), 637 So.2d 1012, 1019 (citing *State v. Celestine*, 452 So.2d 676 (1984)). Finally, there is no prejudicial effect from joinder of two offenses when the evidence of each is relatively simple and distinct, so that the jury can easily keep the evidence of each offense separate in its deliberations. *Brooks*, 541 So.2d at 805.

*State v. Deruise*, 98-541, p. 7 (La. 4/3/01), 802 So.2d 1224, 1232, *cert. denied*, 534 U.S. 926, 122 S.Ct. 283 (2001).

The following colloquy took place in the court below:

THE COURT:

Some of the very cases that I've read pursuant to both your memorandum and Ms. Killingworth's memorandum, typically deal with molestation of juveniles, incest, and that manner. I just find it difficult to believe that a jury could be more hostile than in those cases.

And in those cases where in the case that you just cited, **State of Louisiana versus JTS,** that was a case where there were some four or five charges of molestation or indecent behavior with a juvenile. And I just find it hard to believe, although, yes, were dealing with Second Degree Murder here, that a jury could be or could potentially be more hostile than considering the molestation of a juvenile.

Be that as it may, however, the cases do dictate that there is criteria that must be taken into consideration by the Court, and one of those is one, whether the jury would be confused by the various counts.

Ms. Killingsworth indicates that both of these happened separately and distinctly, two different agencies will be presenting evidence each regarding one count.

Whether the jury would be able to segregate the various charges in evidence, again Ms. Killingsworth, most of the information that I have now is from a pretrial, when we discussed this matter at the bench earlier. But do you still stand by your position that it would be easier for the jury to segregate the various charges and evidence?

MS. KILLINGSWORTH:

Absolutely, Your Honor. I don't think that we'll have any problem with that.

THE COURT:

Where the defendant would be confounded in presenting various defenses, Mr. Hinch, do you have anything that --

MR. HINCH:

No, Your Honor.

THE COURT:

-- either one of those that would --

12

MR. HINCH:

No. Ours as I stated before just with regard to the inherent prejudice. I think the next two factors you're coming to.

THE COURT:

Whether the crimes charged would be used by the jury to infer a criminal disposition.

MR. HINCH:

Yes, Your Honor. And I think that's when it goes to the Prieur rationale, and whether or not -- I think allowing them to go to trial together would be allowing evidence that wouldn't otherwise be admissible in the trial of, you know, either one, if we were to try them separately.

MS. KILLINGSWORTH:

And I would disagree, Your Honor, because then we would never be able to try any cases together, and that is not what the legislature envisions when they set out the rules with regard to joinder and misjoinder.

And certainly, the Supreme Court has ruled that two separate homicides can be tried together. There's case law to that effect cited in my memorandum.

Just because they're murders doesn't make it any difference. They are the same charge.

MR. HINCH:

It seems, Your Honor, in those other cases that is usually the case when they go towards signature crimes or crimes where, you know, it was committed with the same type weapon, the same, you know, modus operandi and used to identify.

. . . .

THE COURT:

Regarding the hostility of the jury, that seems to be the main thrust of your --

13

MR. HINCH:

I think that just stems from the inference the jury is going to decide just that this is a bad person, because the only relevant factor of allowing the evidence of one crime to come to another one, there is no relevant -- and nothing is relevant about one crime with regard to the other.

It doesn't go to motive, as I said, or intent or any of the other things. The only thing it does is show in an inadmissible manner that this is a -- it allows the jury to draw the inference that this is a bad person.

And I think that the courts have tried to take that into consideration and have essentially enumerated this analysis to say that unless it goes towards one of these other relevant factors, as outlined in Prieur and the other cases, that we must look at it and determine whether or not the prejudicial effect of allowing that crime in to the trial on the other one would outweigh the probative value of it.

And there is no probative value of one crime being admitted into the trial of the other in this case.

THE COURT:

Ms. Killingsworth?

MS. KILLINGSWORTH:

Again, I would disagree with counsel's argument with regard to Prieur being the last word on all of this. Certainly, I understand the dictates of Prieur.

And I don't think that that is what the Court must look for when they're making a decision about joinder or misjoinder. I think you have to look at the statute that was enacted by the legislature and go from there.

And with a look at that and the case law that has been presented and found by the Supreme Court, certainly joinder in this case is acceptable. We should be allowed to proceed to trial.

Another thing that I want to make sure that is clear on the record; it wasn't in June when these cases were just joined for the first time, they were joined in March of 2005.

They've been joined for many, many months. And this is not anything new with regard to what was going on in this case. Now, I

can't help it if they didn't notice that.  He was arraigned on the Bill.  He knew he was charged in the same bill of information with two counts of murder.

So, this wasn't just done.

MR. HINCH:

For the record, Your Honor, I was not representing him at the time he was arraigned on the new Bill.

THE COURT:

I understand.  You made that point in your request Mr. Hinch.

I'm going to deny your Motion For Severance at this time, Mr. Hinch.

MR. HINCH:

Thank you, Your Honor.

MS. KILLINGSWORTH:

Thank you, Your Honor.

MR. HINCH:

Your Honor, for the record, we would object to that.

The trial court referred to *State v. J.T.S.*, 03-1059 (La.App. 3 Cir. 2/4/04), 865 So.2d 1032, a case which, like *Deruise*, cited *Washington* for a five-factor analysis of motions to sever.  Defendant implies, much as he argued below, that *State v. Prieur* should control analyses of whether charges should be severed.  However, this position is refuted by *Deruise*.

For the reasons discussed, we do not find  the trial court abused its discretion in refusing to grant the motion the sever.  Thus, the assignment lacks merit.

15

## PRO SE ASSIGNMENT OF ERROR NO. 1:

In his first pro se assignment, the defendant argues his sentences are excessive, and that the trial court did not give sufficient reasons to support the sentences. We note that the defendant failed to file a motion to reconsider sentence below, as required by La.Code Crim.P. art. 881.2. In the absence of the required motion, this court reviews excessive-sentence claims as bare claims of constitutional excessiveness.

The analysis is well-settled:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. "'[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.'" *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> The fifth circuit, in [*State v.*] *Lisotta*, [(La.App. 5 Cir. 12/16/98)], 726 So.2d [57] at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:
>
> 1. The nature of the crime,
>
> 2. The nature and background of the offender, and
>
> 3. The sentence imposed for similar crimes by the same court and other courts.

*State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59.

Regarding count one, we note that although the jury convicted the defendant of manslaughter, the facts would have supported a conviction as a principal to second degree murder. The defendant's accomplice Jason Thomas killed the victim to facilitate robbing him. The robbery-murder at issue was cold-blooded, to say the least. As for the nature of the offender, he was a self-admitted drug dealer. Looking to the sentences imposed for similar crimes, we find very little jurisprudence on point. However, we note that in *State v. Holland*, 544 So.2d 461 (La. App. 2 Cir. 1989), *writ denied*, 567 So.2d 93 (La.1990), the defendant was prosecuted as a principal to a robbery-murder, but was convicted of manslaughter. On appeal, he argued that his sentence was excessive. The second circuit explained:

> The fact that the defendant was not acquitted indicates that the jury must have accepted the state's version of the case and rejected that advanced by the defendant. While the jury undoubtedly felt it inappropriate to convict this defendant of the same offense as the triggerman in the shooting, and entered a compromise verdict, the offense actually committed was not manslaughter, but second degree murder. See *State v. Freeman*, 521 So.2d 783 (La.App. 2d Cir.1988). Since the conduct involved is not adequately described by the offense, the concept that the maximum sentence can be imposed only for the most serious violation and the worst type of offender is not applicable. *State v. Lanclos,* supra.

*Id.* at 477.

The defendant complains the trial court did not follow the dictates of La.Code Crim.P. art. 894.1. However, in the context of an analysis for constitutional excessiveness, the article's guidelines are not mandatory in nature. As noted above, the facts of this case are clearly indicative of second degree murder, rather than manslaughter. Thus, the record clearly supports the defendant's maximum sentence for manslaughter; like the defendant in *Holland*, he has already received the benefit of a compromise verdict.

17

For the reasons discussed, defendant's sentence for manslaughter is not excessive.

The life sentence the defendant received is mandatory for second degree murder. In *State v. Runyon*, 05-36, p. 33 (La.App. 3 Cir. 11/2/05), 916 So.2d 407, 429-30, *writ denied*, 06-1348 (La. 9/1/06), 936 So.2d 207, *writ denied*, 06-667 (La. 11/17/06), 942 So.2d 526, this court discussed a sentence for second degree murder as follows:

> In *State v. Paddio*, 02-722, pp. 16-17 (La.App. 3 Cir. 12/11/02), 832 So.2d 1120, 1131, *writ denied*, 03-402 (La.2/13/04), 867 So.2d 682 (citations omitted), this court discussed the imposition of life sentences under La.R.S. 14:30.1, stating:
>
>> [A] court may depart from a minimum sentence only if it finds that there is clear and convincing evidence that rebuts the presumption of constitutionality. To rebut the presumption, a defendant must show, by clear and convincing evidence, that, "because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case."
>
> Defendant McDonald set forth no mitigating reasons why his sentence is cruel, unusual, or too severe. He makes no attempt to set forth unusual circumstances that rebut the presumption of constitutionality; thus he has failed to meet his burden of proof on this point. The gravity of the offense merits the punishment prescribed by the legislature, and Defendant McDonald makes no showing to the contrary.

In *State v. Adams*, 04-77, pp. 12-13 (La.App. 3 Cir. 9/29/04), 884 So.2d 694, 703, *writ denied*, 04-2709 (La. 2/25/05), 894 So.2d 1131, *writ denied*, 04-2880 (La. 2/25/05), 894 So.2d 1132, another case involving a sentence for second degree murder, this court cited *Paddio*, and further explained:

> Corey has failed to prove by clear and convincing evidence the existence of unusual circumstances which demonstrate that he is "a victim of the legislature's failure to assign sentences that are

18

meaningfully tailored to [his culpability], the gravity of his offense, and the circumstances of [this] case." *Id.* Furthermore, he failed to prove any unusual circumstances warranting a departure from the mandatory minimum sentence provided by the legislature. His sentence is not constitutionally excessive. *State v. Ross*, 03-564 (La.App. 3 Cir. 12/17/03), 861 So.2d 888, *writ denied*, 04-376 (La.6/25/04), 876 So.2d 829.

Other than an implication that the conviction itself was unconstitutional, Corey does not allege a basis for finding the sentence excessive. The basic claim of an unconstitutional conviction is not the proper subject of an excessive-sentence review, and Corey fails to specify why his conviction should be considered unconstitutional. He falls far short of rebutting the presumption that his sentence was proper.

Like the defendants in *Runyon* and *Adams*, the defendant fails to set forth any basis for finding that he should have received a lesser sentence. Based on his conviction, the jury must have accepted the state's theory that the defendant killed Bobby Pete in a hand-to hand struggle. Such a scenario is similar to the facts of *Hargrave*, and similarly, does not shock the conscience.

For the reasons discussed, this assignment lacks merit.

**PRO SE ASSIGNMENT OF ERROR NO. 2:**

In this assignment, the defendant complains his federal and state constitutional rights were violated because that the indictment was not presented in open court. The controlling statute is La.Code Crim.P. art. 383:

An indictment is a written accusation of crime made by a grand jury. It must be concurred in by not less than nine of the grand jurors, indorsed "a true bill," and the indorsement must be signed by the foreman. Indictments shall be returned into the district court in open court; but when an indictment has been returned for an offense which is within the trial jurisdiction of another court in the parish, the indictment may be transferred to that court.

The minutes show that the grand jury foreman and one other grand juror appeared in open court and presented the grand jury's report. The indictment against the defendant was presented as a true bill. Further, it was indorsed by the grand jury

19

foreman. Thus, defendant's argument that the indictment was not presented in open court lacks a factual basis.

He also argues that the record fails to show that the required nine grand jury members concurred in the return of the true bill. The minutes in the present case show that only the grand jury foreman and one other grand juror were present to return the indictment in open court. La.Code Crim.P. art. 533, states:

> A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
>
> (1) The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.
>
> (2) An individual grand juror was not qualified under Article 401.
>
> (3) A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.
>
> *(4) Less than nine grand jurors were present when the indictment was found.*
>
> (5) The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

(Emphasis added).

In *State v. Miller*, 98-642 (La.App. 3 Cir. 10/28/98), 720 So.2d 829, *writ denied*, 98-3119 (La. 5/14/99), 741 So.2d 659, this court recognized an error patent regarding an indictment:

> The grand jury indictment charging the Defendant with second degree murder does not contain a "true bill" indorsement.
>
> . . . .
>
> However, we find the Defendant is prevented from raising this error due to his failure to file a motion to quash. La.Code Crim.P. art.

20

533 provides for the quashing of an indictment if it was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury. According to La.Code Crim.P. art. 535(C), a motion to quash on such grounds must be filed in accordance with La.Code Crim.P. art. 521-- i.e., within 15 days of arraignment, unless a longer period is fixed by the court. Thus, even though the lack of a "true bill" indorsement is an error patent, the error is waived due to the Defendant's failure to file a motion to quash before trial.

*Id.* at 831.

Similarly, in the present case the defendant failed to file a motion to quash based on this issue. He is, therefore, barred from raising this issue on appeal. Also, this court has obtained a copy of the transcript of the proceedings on March 15, 2005. Although it does not explicitly state the number of grand jurors present at the proceeding, it does indicate that nine grand jurors voted in favor of the indictment.

For the reasons discussed, this assignment lacks merit.

## PRO SE ASSIGNMENT OF ERROR NO. 3:

In his third and final pro se assignment, the defendant argues that his sentence for manslaughter "is illegal because it does not allow for probation." He also complains that the trial court erred by denying him parole eligibility. These issues have already been addressed in the analysis of errors patent.

Thus, there is no need to discuss them here.

## CONCLUSION:

The convictions are affirmed. However, the defendant's sentence on the manslaughter conviction is amended to delete the denial of parole eligibility, and the district court is instructed to make an entry in the minutes reflecting this change. Additionally, the matter is remanded and the trial court is directed to inform the defendant of the provisions of article 930.8 by sending appropriate written notice to

the defendant within ten days of the rendition of this opinion, and to file written proof that the defendant received the notice in the record of the proceedings.

**AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.**
**Uniform Rules—Courts of Appeal, Rule 2-16.3.**